3:26-mj-00121

DISTRICT OF OREGON: ss,                    AFFIDAVIT OF BOBBY GUTIERREZ

## Affidavit in Support of a Criminal Complaint

I, Bobby Gutierrez, being first duly sworn, hereby depose and state as follows:

## Introduction and Agent Background

1.      I am a Special Agent with the Federal Bureau of Investigation and have been since January 2021.  I am currently assigned to the FBI's Portland Division and am part of the Transnational Organized Crime and Violent Gang Squad.  I presently work a variety of criminal and national security matters, including the investigation of violent crimes, gangs and narcotics, in addition to the apprehension of federal fugitives.  During my 21-week training at the FBI Academy, Quantico, Virginia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause.  In my current area of responsibility, I work with law enforcement officers who have experience and training in investigating coded communication involving the distribution of controlled substances and gang affiliations.  I have used this training and experience, as well as the training and experience of other law enforcement officers familiar with this investigation, to demonstrate how these criminal enterprises plan, organize and carry out criminal activity.

2.      Prior to being employed with the FBI, I was a Licensed Master Social Worker (LMSW) in the state of Arizona for approximately six years.  As a LMSW, I was responsible for creating and implementing target treatment plans for court-ordered criminal offenders with a chronic history of substance use disorders, domestic violence, and child abuse.  In addition to my employment as an LMSW, I was a behavioral health consultant for Medicare/Medicaid and oversaw medical and mental health treatment for patients residing in assisted living homes and

**Affidavit of Special Agent Bobby Gutierrez**                    **Page 1**

skilled nursing facilities.  As a consultant, I was responsible for auditing medical treatment plans, levels of care, and medications to include psychotropic and Schedule II narcotic pain medications.

3.    This affidavit is based upon a joint investigation conducted by the Portland Police Bureau's (PPB) Central Precinct Neighborhood Response Team (NRT)/Bike Squad and the Federal Bureau of Investigation (FBI).

### Purpose of Affidavit

4.    This affidavit is submitted to support a criminal complaint and arrest warrant for **Edward Mortenson**, a male, date of birth 05/xx/1970 (hereinafter referenced as "**Mortenson**") for committing the felony crime of Possession with Intent to Distribute 50 grams or more of Mixture and Substance containing Methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B).

5.    I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation.   I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

### Confidential Informant

6.    This investigation involves the use of a Confidential Informant (CI) who provided the information by his/her own free will.  CI is working with Investigators and provided actionable information to law enforcement in exchange for consideration on their pending criminal charges.  No promises or guarantees were made by investigators to gain CI's cooperation.  CI has previously been arrested for Domestic Assault/Strangulation, Stalking/Intimidation, Harassing Communications, Possession of a Controlled Substance and Paraphernalia with the intent to use,

**Affidavit of Special Agent Bobby Gutierrez**                    **Page 2**

Possession of Controlled Substances with the Intent to Distribute, and Theft.  CI is specifically aware of the methods of packaging and the prices of the controlled substances because CI has used and/or has had associates who use these and other types of illegal drugs and has accurately described this information to Investigators.  CI has provided information that led to arrests and seizure of contraband.  Based on CI's ability to conduct recorded, drug-related phone calls with a target individual, and observations of physical surveillance that corroborate CI's ability to order narcotics from a target individual, Investigators believe the information CI has provided to be credible and reliable.

### Summary of Probable Cause

7.     Since the beginning of 2024, Investigators have conducted ongoing investigations targeting methamphetamine, fentanyl, and other controlled substance dealers working primarily in downtown Portland, Oregon.   These investigations have since expanded to neighboring communities experiencing a high presence of narcotics trafficking.  The focus of these missions has been to reduce the flow of illicit narcotics in these areas where many schools, shelters, and affordable housing establishments exist.  In return, these missions have been shown to reduce drug overdoses and the criminal activity associated with the sales of narcotics, including gun violence.

8.     Around the middle of April 2026, Investigators received a community tip regarding a suspected narcotics dealer operating at the Musolf Manor.[1]  The suspected dealer, who Investigators were advised was named "Edward" was believed to be selling methamphetamine and

---

[1]     The Musolf Mantor Apartments located at 216 N.W. 3rd Avenue, Portland, Oregon, is an affordable housing complex which focuses on addressing the critical need for stable housing, especially for vulnerable populations.

**Affidavit of Special Agent Bobby Gutierrez**                                    **Page 3**

fentanyl and had established a reputation for ongoing police contacts with issues related to narcotics. The community tipster also provided a photo of "Edward" to Investigators.

9.     Upon receiving this information, Investigators communicated with the CI regarding a suspected narcotics dealer. The CI who has a history of providing actionable information regarding narcotics dealers operating in downtown Portland, Oregon. We showed the CI the picture of "Edward" we had been provided and the CI recognized the individual in the photo as a person they also knew as "Edward" and acknowledging that "Edward" sold "meth at the mossaf."

10.     On that same day, the CI walked to the area of the Musolf Manor and observed "Edward" selling drugs outside the complex. The CI advised that they approached "Edward" who was actively selling methamphetamine and "Edward" provided the CI a price for an ounce of methamphetamine, if the CI was interested in buying it. The CI also advised that "Edward" informed the CI that he had a "shit ton more upstairs," which the CI believed was "Edward" referring to having more methamphetamine in his apartment. The CI told "Edward" they would return to buy some methamphetamine when they had the money. This lead was provided to PPB Officers who shortly thereafter began their investigation into "Edward."

11.     During the last week of April 2026, Investigators received another tip from management at the Musolf Mannor regarding "Edward." The information provided was that "Edward," later identified as **Edward Mortenson**, was captured on video in which he appeared to drop a bag of suspected methamphetamine while in the Musolf Manor apartment complex. This information was also provided to PPB Officers who followed up with management on April 28, 2026.

12.     On April 28, 2026, after speaking with management, Officers learned that management had video footage of **Mortenson** walking into the elevator of the apartment

**Affidavit of Special Agent Bobby Gutierrez**                    **Page 4**

complex where an amount of what management believed to be methamphetamine fell out of his pant leg.  Management also found some crystal shards on the ground in the same area that they believed to be methamphetamine.  Management provided law enforcement a bag of three shards of a crystallized substance that they picked up from around the elevator.  Based on the Officers' training and experience they also believed these crystal shards to be methamphetamine.

13.     Management also told the Officer they believed chunks of the methamphetamine fell in between the elevator and elevator shaft and they were having an elevator technician come stop the elevator.  Management invited the Officer to come out and see.  The Officer agreed, returned later and recovered additional suspected methamphetamine.  The suspected methamphetamine that was seized was field tested and the field test returned presumptively positive (+) for methamphetamine, a Schedule II controlled substance.  I have found such field tests to be reliable with subsequent forensic analysis repeatedly confirming the results.  The seized methamphetamine also weighed approximately 5.9 grams, without packaging.  Below is a photo of the recovered methamphetamine:



///

**Affidavit of Special Agent Bobby Gutierrez**                                                     **Page 5**

*Arrest of Mortenson*

14.    On April 29, 2026, Officers who were on surveillance near the Musolf Manor observed a male, who Officers identified as **Mortenson**, walk out of the Musolf Manor and engage in what appeared to be a hand-to-hand drug transaction with another individual.  Officers observed **Mortenson** reaching into his side left vest jacket pocket and pull out a clear plastic baggie.  The baggie appeared to be filled with a cloudy substance consistent with methamphetamine. **Mortenson** handed the baggie to the suspected customer.  Shortly thereafter, Officers in their police uniforms approached **Mortenson** and placed him into custody without incident.

15.    During a search of **Mortenson**, in his left vest pocket, Officers located six separately divided user-size baggies that contained approximately 14.2 grams of a crystallized substance.  They also located approximately $326 in different denominations in his right and left pants pockets.  Officers later tested the suspected narcotics which tested presumptively positive (+) for methamphetamine, a Schedule II controlled substance.

16.    Officers then applied for a state warrant to search **Mortenson**'s apartment inside the Musolf Manor.  Officers were granted the warrant and executed the warrant that afternoon.

*Mortenson's Premises Warrant*

17.    On April 29, 2026, a search of **Mortenson**'s apartment at the Musolf Manor resulted in the seizure of suspected methamphetamine, packaging material, a scale, and bulk U.S. Currency believed to be from the sale of narcotics.  In the living room of the apartment Officers discovered a Ziploc style bag which contained approximately 317.1 grams of suspected methamphetamine, to include packaging.  Within the bathroom, Officers found another Ziploc style bag which contained approximately 53.7 grams of suspected methamphetamine, to include packaging.  Below are images capturing some of the above:

**Affidavit of Special Agent Bobby Gutierrez**                                    **Page 6**





18.    The seized suspected narcotics were taken to PPB's Central Precinct to weigh and field test. Officers tested samples of the suspected methamphetamine using a MobileDetect test kit and received a presumptively positive (+) result for methamphetamine, a Schedule II controlled substance. I have found MobileDetect to be a reliable way to field test controlled substances with subsequent forensic analysis regularly confirming the initial results. In summary, Officers seized a combined approximate weight of 370.8 grams of methamphetamine, to include packaging, from

**Mortenson´s** apartment and approximately 14.2 grams of methamphetamine, to include

**Affidavit of Special Agent Bobby Gutierrez**                                                              **Page 7**

packaging, from **Mortenson**'s person.  In total, from both **Mortenson´s** person and apartment, Officers seized approximately 385 grams of methamphetamine, to include packaging.

19.    As Officers processed the evidence, **Mortenson** was held in a detention cell waiting to be interviewed.  **Mortenson**, who was advised of his constitutional *Miranda* rights, refused to talk to Officers.  **Mortenson** was subsequently lodged at the Multnomah County Detention Center on federal charges.

20.    I am very familiar with how methamphetamine affects users and how it leaves the user wanting more.  I know that methamphetamine is a Schedule II controlled substance.  I also know from training and experience that methamphetamine in its illicit form is a highly addictive stimulant that causes both short-term and long-term psychiatric effects.  Users of methamphetamine often experience extreme agitation, anxiety, paranoia, visual, and auditory hallucinations.  Because methamphetamine is a very potent stimulant, users of methamphetamine run the risk of seizures, elevated blood pressure, stroke, and death.  I also know, based upon my training and experience, that methamphetamine is typically used in quantities of one-tenth (.1) to one-quarter (.25) of a gram, either intravenously or by being smoked.  I know a gram of methamphetamine on the street can sell for around $10 to $20 and that users typically buy small amounts, often one, two or three grams at a time.  Since drugs like methamphetamine are sold based upon weight, I also know that drug dealers regularly possess either a scale or prepackaged amounts of drugs in set weights to aid in their distribution of the drug.  Accordingly, I know that a person possessing more than 10 grams of methamphetamine does not possess it for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

///

**Affidavit of Special Agent Bobby Gutierrez**                    **Page 8**

**Conclusion**

21.    Based on the foregoing, I have probable cause to believe, and I do believe, that **Edward Mortenson** has committed the felony crime of Possession with Intent to Distribute 50 grams or more of Mixture and Substance containing Methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B).  I therefore request that the Court issue a criminal complaint and arrest warrant for **Mortenson**.

22.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin.   AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Bobby Gutierrez, Special Agent
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at _1:10_____ a.m./p.m. on May 1, 2026.

Jolie A. Russo
_____
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE

**Affidavit of Special Agent Bobby Gutierrez**                    **Page 9**